1
2
3
4
5
6               **UNITED STATES DISTRICT COURT**
7                     **DISTRICT OF NEVADA**
8
9   SCOTT J. BEDARD,                )
                                    )
10              Petitioner,         )        3:08-cv-0294-LRH-RAM
                                    )
11  vs.                             )        **ORDER**
                                    )
12  E.K. McDANIEL, *et al.*,        )
                                    )
13              Respondents.        )
    _____)
14

15          Before the Court is respondents' Answer to the surviving claim in the Second Amended

16  Petition (ECF No. 48), with petitioner's Reply (ECF No. 53).  Also pending is petitioner's Motion

17  for Leave to File Excess Pages (ECF No. 54).  That motion is unopposed and shall be granted.

18  **I.      Procedural Background**

19          Petitioner is serving a life sentence without the possibility of parole on a conviction for

20  murder with the use of a deadly weapon and numerous burglary and robbery counts.  Exhibit 184.[1]

21  Petitioner was charged on October 3, 1997, via a grand jury indictment for the robbery and killing of

22  William Hanlon, a jamitor working at the Templeton Office Plaza.  Petitioner was also charged with

23  burglarizing various offices within the building. Exhibit 4.  Petitioner received notice of the state's

24  intent to seek the death penalty in the case.  Exhibit 5.

25          During the course of the criminal proceedings, petitioner sought to have counsel removed, to

26  represent himself, and was subjected to at least two psychological evaluations.  *See e.g.,* Exhibits 6,

27  _____

28          [1] The exhibits referenced herein were submitted by petitioner in response to his first amended
    petition and are found in the court's docket at entries 14-24.

1   17-25, 34-74.  Petitioner represented himself with the assistance of stand-by counsel until attorneys

2   Peter Christiansen and Michael Cristalli were appointed to represent petitioner for the remainder of

3   the proceedings. Exhibit 149.

4           Much of the evidence against petitioner was obtained from a storage unit located in the

5   garage of the home of Ms. Ruth Ganjei, the mother of Alena Aresco, petitioner's friend.[2]  Exhibit 75.

6   Petitioner sought to have that evidence suppressed as he argued that the consent to search given by

7   Ms. Ganjei was coerced and that Ms. Ganjei had no standing to give consent.  *Id.*  Petitioner also

8   sought dismissal of Counts I, IV-XII, and XIV-XVIII.  Following a hearing, the motions were

9   denied.  Exhibits 153-154,165.  A four-day guilt phase trial resulted in petitioner's conviction on all

10  counts.  Following a three-day penalty trial, petitioner was spared the death penalty and given a

11  sentence of life without the possibility of parole.  Exhibit 180.  The sentence was imposed on

12  November 30, 2000, and the Judgment of Conviction was entered on December 7, 2000.  Exhibit

13  183 and 184.

14          Petitioner filed a direct appeal and his opening brief raised five grounds for relief.  Exhibit

15  186. The Nevada Supreme Court affirmed the conviction on June 12, 2002, focusing its opinion on

16  Issue Four of the opening brief; whether the burglary counts in the criminal indictment violated the

17  rule against multiplicity.  Exhibit 189.  The balance of petitioner's claims were handled in a footnote,

18  stating "[a]fter careful consideration, we conclude that these arguments lack merit."  *Id.*

19          Petitioner proceeded with post-conviction review, filing a pro se petition raising several

20  grounds related to the performance of his trial and appellate counsel as well as a claim that he was

21  denied a speedy trial.  Exhibit 195.  Counsel was appointed and a supplemental petition was filed

22  adding several more ineffective assistance of counsel claims. Exhibit 202.  The petition was denied

23  without an evidentiary hearing.  Exhibits 203 and 204.  On appeal, the Nevada Supreme Court

24  remanded for the trial court's written findings of fact and conclusions of law as to the supplemental

25  claims raised.  Exhibit 207.  Once that order was entered, petitioner again appealed.  Exhibit 215.

26  The Nevada Supreme Court affirmed the lower court's decision.  Exhibit 216.

27  _____

28          [2] Later in the record, Ruth Gangei is referred to as Ruth Giannasoli.

2

1    **II.      Federal Habeas Action**

2          Upon denial of his state post-conviction review, petitioner submitted his petition for writ of

3    habeas corpus pursuant to 28 U.S.C. § 2254 on May 28, 2008.  Counsel was appointed to assist the

4    petitioner and an amended petition was filed on January 21, 2009.  Counsel sought leave to conduct

5    discovery and the second amended petition was filed thereafter.  Respondents moved to dismiss the

6    petition, resulting in ground 2 being dismissed by the Court and grounds 3 and 4 being abandoned by

7    petitioner.  Exhibits 43, 45.  Grounds 1, 5, 6, and 7 of the Second Amended Petition survive.

8    Respondents have now filed their Answer to those grounds and petitioner has filed his Reply.  The

9    merits of the claims are discussed herein.

10   **III.     Legal Standard under 28 U.S.C. § 2254**

11         28 U.S.C. §2254(d), a provision of the Antiterrorism and Effective Death Penalty Act

12   (AEDPA), provides the standards of review that this Court applies to the petition in this case:

13             An application for a writ of habeas corpus on behalf of a person in
               custody pursuant to the judgment of a State court shall not be granted with
14             respect to any claim that was adjudicated on the merits in State court
               proceedings unless the adjudication of the claim --

15
16             (1)  resulted in a decision that was contrary to, or
               involved an unreasonable application of, clearly
               established Federal law, as determined by the
17             Supreme Court of the United States; or

18             (2)  resulted in a decision that was based on an
               unreasonable determination of the facts in light of the
19             evidence presented in the State court proceeding.

20   28 U.S.C. §2254(d).

21         A state court decision is contrary to clearly established Supreme Court precedent, within

22   the meaning of 28 U.S.C. §2254, "if the state court applies a rule that contradicts the governing law

23   set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are

24   materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a

25   result different from [the Supreme Court's] precedent."  *Lockyer v. Andrade*, 538 U.S. 63, 123 S.Ct.

26   1166, 1173, 155 L.Ed.2d 144 (2003) (*quoting Williams v. Taylor*, 529 U.S. 362, 405-06, 120 S.Ct.

27   1495, 146 L.Ed.2d 389 (2000), and *citing Bell v. Cone*, 535 U.S. 685, 694, 122 S.Ct. 1843, 152

28   L.Ed.2d 914 (2002).

3

1    A state court decision is an unreasonable application of clearly established Supreme Court

2    precedent, within the meaning of 28 U.S.C. §2254(d), "if the state court identifies the correct

3    governing legal principle from [the Supreme Court's] decisions but unreasonably applies that

4    principle to the facts of the prisoner's case."  *Lockyer v. Andrade*, 538 U.S. at 74, 123 S.Ct. at 1174

5    (*quoting Williams*, 529 U.S. at 413, 120 S.Ct. 1495).  The "unreasonable application" clause requires

6    the state court decision to be more than incorrect or erroneous; the state court's application of clearly

7    established law must be objectively unreasonable.  *Id*. (*quoting Williams*, 529 U.S. at 409, 120 S.Ct.

8    1495).

9    With respect to pure questions of fact, "a determination of a factual issue made by a State

10   court shall be presumed to be correct," and the petitioner "shall have the burden of rebutting the

11   presumption of correctness by clear and convincing evidence."  28 U.S.C. §2254(e)(1).

12   If there is no reasoned decision upon which the Court can rely, then it must make an

13   independent review of the record to determine whether the state court clearly erred in its application

14   of controlling federal law. *See Delgado v. Lewis,*  223 F.3d 976, 982 (9th Cir.2000).

15   **IV.    Discussion**

16       Ground One - Ineffective Assistance of Counsel

17   Petitioner claims that he received ineffective assistance of counsel in violation of his rights

18   guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution based on ten

19   separate allegations.

20   In *Strickland v. Washington*, 466 U.S. 668 (1984), the Court established the standards by

21   which claims of ineffective counsel are to be measured.  In *Strickland*, the Court propounded a two

22   part test; a petitioner claiming ineffective assistance of counsel must demonstrate (1) that the defense

23   attorney's representation "fell below an objective standard of reasonableness," and (2) that the

24   attorney's deficient performance prejudiced the defendant such that "there is a reasonable probability

25   that, but for counsel's unprofessional errors, the result of the proceeding would have been different."

26   *Strickland*, 466 U.S. at 688, 694.

27   The *Strickland* Court instructed that review of an attorney's performance must be "highly

28   deferential," and must adopt counsel's perspective at the time of the challenged conduct, in order to

4

1   avoid the "distorting effects of hindsight." *Id*. at 689.  A reviewing court must "indulge a strong

2   presumption that counsel's conduct falls within the wide range of reasonable professional assistance

3   ... [and] the [petitioner] must overcome the presumption that ... the challenged action might be

4   considered sound trial strategy." *Id*. (citation omitted).

5         Construing the Sixth Amendment to guarantee not effective counsel *per se*, but rather a fair

6   proceeding with a reliable outcome, the *Strickland* Court concluded that demonstrating that counsel

7   fell below an objective standard of reasonableness alone is insufficient to warrant a finding of

8   ineffective assistance.  In order to satisfy *Strickland's* second prong, the defendant must show that

9   the attorney's sub-par performance prejudiced the defense.  *Id*. at 691-92.  The test is whether there

10  is a reasonable probability that, but for the attorney's challenged conduct, the result of the proceeding

11  in question would have been different.  *Id*. at 691-94.  The Court defined reasonable probability as "a

12  probability sufficient to undermine confidence in the outcome."  *Id*. at 694.

13         **A.    Trial Counsel failed to Present a Coherent or Consistent Theory of Defense at
            Trial.**

14

15        Petitioner contends that the evidence presented at trial pointed toward a theory of defense

16  that: Bedard was at the office complex, he stole items from the complex, but that he was not the

17  killer, however, counsel's failure to offer an opening statement left jurors with only the State's

18  argument outline of its theory of petitioner's guilt; counsel failed to develop witness testimony which

19  would support the theory that [petitioner] did not ransack the offices or shoot the victim; and counsel

20  failed to effectively convey the "obvious theory of defense in closing arguments."

21        Petitioner argues that because the physical evidence was not inconsistent with this defense,

22  counsel should have presented a strong statement that would have allowed the jury to comprehend

23  and appreciate the possible alternative course of events rather than that presented by the State, and

24  counsel should have emphasized the evidence which supported the theory that petitioner was present

25  at the scene of the crime, but was not the killer, rather than attempting to attack the evidence proving

26  that petitioner was present.  Petitioner concludes that counsel "essentially abandoned their client's

27  most promising defense" and such cannot be deemed trial strategy.

28        When faced with this claim, the Nevada Supreme Court determined it did not warrant

5

1   relief, where petitioner had failed to identify a cogent defense theory which counsel could have

2   presented.  Exhibit 216, p. 5.  This Court agrees.  Defendant's "most promising defense" - that he

3   was on the scene and possessed items taken from burglarized offices that had been ransacked

4   violently by someone else and that he had simply come across someone who had been killed, but he

5   was not the killer despite possessing the gun, is not a "cogent" defense.  Such a defense lacks

6   credibility and the decision to forego its presentation does not indicate counsel who is ineffective.

7   Such a strategic decision would be reasonable in light of the strong evidence against petitioner.

8          Neither has petitioner shown that the outcome of his trial would have been different if such

9   a defense had been presented.  Petitioner's blood, fingerprints and bloody footprints were found on

10   the scene.  Items stolen from the office building were recorded in his possession on security tapes at

11   the doughnut shop where he went to call for a ride after the burglaries and murder were committed.

12   Witnesses with whom petitioner had conversations almost immediately after the burglaries testified

13   that petitioner had a gun in his possession and that he said someone had been shot or that he had shot

14   someone.  Such evidence would have, and quite simply did, overcome any suggestion that someone

15   else was present in the building and killed the victim before petitioner arrived on the scene and

16   entered the various offices to steal computers and a gun, particularly the gun that was used to kill the

17   victim.

18          Given the evidence presented at trial, counsel's performance was not deficient in failing to

19   suggest that he was on the scene, but not guilty of the destruction, theft, and killing that occurred

20   there, particularly when no other suspects were identified. This Court cannot find that counsel's

21   purported failure raises "a reasonable probability that," but for the lack of this theory of defense, "the

22   result of the proceeding would have been different." *Strickland*, 466 U. S., at 694. The Court

23   therefore cannot find the Nevada Supreme Court's decision rejecting petitioners ineffective

24   assistance of counsel claim to be an "unreasonable application" of the law "clearly established" in

25   *Stricklan*d. §2254(d)(1).

26       **B.      Counsel Failed to Investigate and Present Potentially Exculpatory Evidence at
                   Trial**

27

28          Petitioner contends that counsel failed to investigate and establish petitioner's whereabouts

1  during the early morning hours of August 6 and failed to investigate and present evidence which

2  would have "potentially" discredited the three witnesses who implicated petitioner in the shooting.

3  He contends that he had informed his original public defender and an investigator that witnesses

4  Aresco and Merriam said the police "made" them say petitioner admitted to the shooting and that

5  they agreed to provide affidavits to that effect.  Petitioner further notes that the only connection to

6  the "actual shooting" was the testimony of Williams, Merriam and Aresco.

7       Counsel has "a duty to make reasonable investigations or to make a reasonable decision

8  that makes particular investigations unnecessary." *Strickland,* 466 U.S. at 691. More specifically, "a

9  particular decision not to investigate must be directly assessed for reasonableness in all the

10  circumstances, applying a heavy measure of deference to counsel's judgments." *Id.*

11  Furthermore, " 'ineffective assistance claims based on a duty to investigate must be considered in

12  light of the strength of the government's case.' " *Bragg v. Galaza,* 242 F.3d 1082, 1088 (9th

13  Cir.2001) (quoting *Eggleston v. United States,* 798 F.2d 374, 376 (9th Cir.1986)).

14       In the state post-conviction proceedings, petitioner's claims related to counsel's failure to

15  investigate indicated that additional investigation would have allowed an attack on the time line

16  presented by the prosecution.  In denying petitioner's claim that counsel failed to investigate, the

17  Nevada Supreme Court concluded that the abundance and significance of the physical evidence

18  linking petitioner to the crime, including the fact that petitioner attempted to hide the evidence, could

19  not have been overcome by additional investigation.   Exhibit 216, p. 4.

20       Petitioner argues that the Nevada Supreme Court's order failed to address whether or not

21  counsel was deficient in this regard, requiring a *de novo* review by this Court, citing to *Porter v.*

22  *McCollum,* 130 S.Ct. 447, 452 (2009), which in turn cites to *Rompilla v. Beard,* 545 U.S. 374, 390,

23  125 S.Ct. 2456 (2005).  In *Rompilla,* the United States Supreme Court found that the state courts'

24  failure to consider the prejudice prong of the *Strickland* analysis required the Court to make that

25  analysis *de novo.*  However, *Rompilla* is distinguishable from the instant case in that the state court

26  in *Rompilla* had not considered the prejudice prong because it found that counsel had not been

27  ineffective - making the prejudice review unnecessary.  The Supreme Court in reviewing Rompilla's

28  claim found it necessary to do a *de novo* review of prejudice under *Strickland* because it <u>had</u> found

7

counsel's performance fell below the objective standard of reasonableness and *Strickland* requires a

finding of <u>both</u> deficient performance and prejudice therefrom. *Id.* ("Because the state courts found

the representation adequate, they never reached the issue of prejudice. . . .")  While the *Porter* Court

seems to require a *de novo* review of the claim if no finding of both prongs is made by the state

court, this suggestion flies in the face of the Court's direction in *Strickland*, wherein the Court said:

> Although we have discussed the performance component of an
> ineffectiveness claim prior to the prejudice component, there is no
> reason for a court deciding an ineffective assistance claim to approach
> the inquiry in the same order or even to address both components of
> the inquiry if the defendant makes an insufficient showing on one. In
> particular, a court need not determine whether counsel's performance
> was deficient before examining the prejudice suffered by the defendant
> as a result of the alleged deficiencies. The object of an ineffectiveness
> claim is not to grade counsel's performance. If it is easier to dispose
> of an ineffectiveness claim on the ground of lack of sufficient
> prejudice, which we expect will often be so, that course should be
> followed.

*Strickland,* 466 U.S. at 697.

In fact, petitioner is "entitled to relief only if the state court's rejection of his claim of

ineffective assistance of counsel was 'contrary to, or involved an unreasonable application of'

*Strickland*, or it rested 'on an unreasonable determination of the facts in light of the evidence

presented in the State court proceeding.' 28 U.S.C. § 2254(d)."  *Porter* 130 S.Ct. at 452.  Such is not

the case here.  The evidence presented at trial, particularly, the physical evidence at the scene and in

petitioner's possession strongly implicates him in the murder and the burglary.  He possessed the

stolen property, including the murder weapon, and his fingerprints and footprints were found at the

scene.   The timeline he argues in his state post-conviction petition cannot be reasonably supported

and his suggestion that the murder victim was killed long before he arrived on the scene is untenable

in light of the evidence.  Petitioner is not entitled to relief on this claim of ineffective assistance of

counsel, as the Nevada Supreme Court's findings that he did not suffer prejudice as a result of

counsel's performance were not objectively unreasonable under 28 U.S.C. § 2254(d).

**C.    Counsel Failed to Impeach Charles Williams and Failed to Develop a Record Regarding Williams's Prior Conviction for Fraud.**

Next petitioner claims his counsel was ineffective because he failed to impeach a key state

witness, Charles Williams, on cross-examination and through the records of Williams's criminal conviction for fraud.   More specifically, petitioner contends counsel was ineffective for failing to ensure the trial court made a record of its reasons for denying counsel the opportunity to cross-examine Williams about his recent conviction, denying the jury the opportunity to judge Williams's credibility.

Despite petitioner's contentions of the importance of Williams's testimony in linking the petitioner to the shooting, a review of his testimony shows that Williams offered nothing that would link petitioner to the shooting which the physical evidence did not.  Williams testified about what he had heard from Alena Aresco and that he had seen two laptop computers and a gun, which Aresco had received from petitioner, in her apartment.  In addition, counsel took great pains in his cross-examination to discredit Williams's testimony on the basis of the reward money he received for his report.  Williams offered nothing first hand to "link petitioner to the shooting" it merely linked him to the stolen items.  Finally, on redirect, the prosecutor questioned Williams about the misdemeanor conviction which defense counsel had attempted to introduce.  While the nature of the offense was not brought out, its existence and Williams's other criminal activities were brought to the jury's attention so that it could, in fact, use the information to evaluate Williams's credibility.

The Nevada Supreme Court considered this claim and found that petitioner could not demonstrate that the outcome of the proceedings would have been different "given the overwhelming evidence of guilt" presented at trial.  Exhibit 216, p. 5.  As with the prior claims, petitioner asserts that the Nevada Supreme Court's failure to make a specific finding as to counsel's performance while finding that there was no prejudice leaves this Court to make a *de novo* determination as to counsel's effectiveness.  As previously discussed, under *Strickland,* the court reviewing a claim of ineffective assistance of counsel need not consider both prongs of the analysis if the first to be considered is found to be absent.  *Strickland,* 466 U.S. at 697.  The Nevada Supreme Court's conclusions is neither, and this Court will not grant relief where the state court's determination of the

1  claim is objectively reasonable.[3]  Also as previously discussed, unless this Court finds that the

2  Nevada Supreme Court's denial of the claim was contrary to or resulted from an objectively

3  unreasonable application of clearly established federal law or from an objectively unreasonable

4  determination of the facts, no relief can be granted under 28 U.S.C. § 254(d).  The Nevada Supreme

5  Court's conclusions is neither and this Court will not grant relief where the state court's

6  determination of the claim is objectively reasonable.

7          **D.    Counsel Failed to Voir Dire the Jurors Regarding Adverse Pretrial Publicity.**

8          Petitioner asserts that there was "extensive pretrial publicity, in large part because Bill

9  Hanlon, the victim's father, was a prominent teacher who served on the State Board of Education,

10  and wrote a newspaper column.  (Ex 220.)" Reply brief, p. 12.  The articles and opinion columns

11  described petitioner's prior arrest record and opined the killing of "a fine young man" as an "act of

12  violence so senseless" as to be "beyond human comprehension."  Exhibit 224.

13          Federal Rule of Criminal Procedure 21, instructs that a "court must transfer the proceeding

14  ... to another district if the court is satisfied that so great a prejudice against the defendant exists in

15  the transferring district that the defendant cannot obtain a fair and impartial trial there."  The

16  Constitution requires that a criminal trial proceed in the "State where the said Crimes shall have been

17  committed. . . ." Ar. III, § 2, cl. 3.  *See also* Amdt. 6.  However, a change of venue for such a trial to

18  a different district  may be granted at the defendant's request "if extraordinary local prejudice will

19  prevent a fair trial - a 'basic requirement of due process,' " *Skilling v. U.S.* 130 S.Ct 2896, 2913

20  (2010) quoting *In re Murchison,* 349 U.S. 133, 136 75 S.Ct. 623 (1955).

21          A change of venue due to pre-trial publicity is not automatic.  The United States Supreme

22  Court has reiterated this holding in numerous cases.  *See e.g., Murphy v. Florida*, 421 U.S. 794,

23  798–799, 95 S.Ct. 2031 (1975) (news accounts of the crime alone do not presumptively deprive the

24  defendant of due process; *Patton v. Yount*, 467 U.S. 1025, 104 S.Ct. 2885 (1984); *Irvin v. Dowd*, 366

25  U.S. 717, 722, 81 S.Ct. 1639  (1961) (Jurors are not required to be "totally ignorant of the facts and

26

27          [3] Petitioner's reference to other cases in which "courts have found deficient performance where,
    as here counsel failed to effectively challenge the credibility of the prosecution's key witness" misses
28  the mark as they can be distinguished from the facts of this case quite easily.

10

1    issues involved"; "scarcely any of those best qualified to serve as jurors will not have formed some

2    impression or opinion as to the merits of the case."); *Reynolds v. United States*, 98 U.S. 145,

3    155–156 (1879) ("[E]very case of public interest is almost, as a matter of necessity, brought to the

4    attention of all the intelligent people in the vicinity, and scarcely any one can be found among those

5    best fitted for jurors who has not read or heard of it, and who has not some impression or some

6    opinion in respect to its merits."). Accordingly, a presumption of prejudice "attends in only the

7    extreme case." *Skilling*, 130 S.Ct. at 2915. Where jurors are exposed to information about the

8    defendant's prior convictions or to news reports about the crime he is accused of committing, no

9    presumption of prejudice arises. *Murphy v. Florida,* 421 U.S. 794, 799, 95 S.Ct. 2031 (1975).

10        In the news articles and opinion pages provided by petitioner, the reports focus mostly on

11   the crime itself and the facts of the court proceedings as they occurred. The articles cover the period

12   of time between the crime and the trial. These reports are not overly prejudicial, presenting only

13   factual reports of court proceedings and known facts of the crime. See generally, Exhibit 226. There

14   are, however, two opinion pieces, both authored in 1997, which do make characterizations of the

15   suspect's prior criminal activity and his assumed motivation for coming to Las Vegas. However,

16   these opinion pieces were published around the time of the funeral of the victim and were distant in

17   time to the selection of the jury three years later. Thus, it cannot be said that counsel's failure to voir

18   dire the potential jurors about pretrial publicity was deficient performance or that a lack of such a

19   voir dire caused prejudice to petitioner. The physical evidence tying petitioner to the crime was

20   substantial and the temporal distance between the opinion pieces and the jury selection suggest little

21   likelihood of prejudice. The Nevada Supreme Court's rejection of the claim was proper under 28

22   U.S.C. § 2254(d) and no relief is warranted on this claim.

23            **E.      Counsel Failed to Seek a Change of Venue.**

24        Petitioner further argues that counsel was ineffective for failing to move for a change of

25   venue based upon the pre-trial publicity. Based on the previous discussion, the Court finds that

26   counsel's failure to seek a change of venue due to inflammatory pretrial publicity was not objectively

27   unreasonable. No relief is warranted as to this claim.

28   ///

11

**F.    Counsel Failed to Object to an Improper, Irrelevant, and Inflammatory Redirect Examination of the Victim's Wife.**

Petitioner's next ineffective assistance of counsel claim lies in his failure to object to irrelevant and inflammatory examination of the murder victim's wife.  Specifically, petitioner contends that counsel should have objected to questions related to the victim's family: whether he had a child, the child's gender and her age. The redirect did not cover any other topic.  Exhibit 171, p. 143.  Petitioner contends this line of questioning was an "obvious, improper and inflammatory appeal for the jury to convict Bedard based on the fact that the victim had a young child."

While, as petitioner asserts, "redirect is <u>normally</u> limited to the scope of cross-examination," citing *U.S. V. Lopez,* 575 F.2d 681, 686 (9th Cir. 1978) (emphasis added), that same court went on to acknowledge, "[t]he judge can, in his discretion, allow a new line of questioning on re-direct." *Id., citing Chapman v. United States,* 346 F.2d 383, 388 (9th Cir. 1965); *McCormick, Evidence,* § 32 (2d ed. 1972).  Thus, counsel's failure to object to this purported instance of prosecutorial misconduct would have been subject to the court's discretion to over-rule such an objection.

Apart from such speculation as to what the court may have done if an objection had been made, the issue revolves around whether the line of questioning was actually improper and inflammatory so as to warrant an objection.  It "is not enough that the prosecutors' remarks were undesirable or even universally condemned." *Darden v. Wainwright*, 699 F.2d, 1031, 1036 (11th Cir. 1983). The relevant question is whether the prosecutors' comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 94 S.Ct. 1868 (1974).

The Nevada Supreme Court concluded that this and other allegations of prosecutorial misconduct were without merit, citing the proper federal standard as established by the United States Supreme Court in *Darden v. Wainwright, supra.*  Exhibit 216, p. 9-10.  Moreover, the court's conclusion that the comments had not infected the proceedings with unfairness "given the overwhelming evidence of guilt" was not an unreasonable application of that law.  The line of questioning, admittedly unrelated to issues raised on cross-examination, was not so protracted or

12

1   inflammatory as to impact the outcome of the trial.  No relief is warranted on this claim.

2         **G.    Counsel Failed to Object to the State's Failure to Collect, Preserve, and Test Potentially Exculpatory Evidence.**

3

4         Petitioner contends his trial counsel should have objected when the state failed to collect,

5   preserve and test DNA from blood and feces found in a bathroom in the office complex and DNA

6   from hairs on a hairbrush located in the office complex, and failed to obtain fingerprints from

7   "certain items found at the scene, including a water bottle."  Petitioner argues that his counsel should

8   have sought dismissal of the charges based on this failure to preserve potentially exculpatory

9   evidence because his theory of the case was that another person was responsible for the crimes.

10         In *Brady v. Maryland*, this United States Supreme Court held "that the suppression by the

11   prosecution of evidence favorable to an accused upon request violates due process where the

12   evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the

13   prosecution." 373 U.S. 83, 87, 83 S.Ct. 1194, 1196 (1963).  There are three components of a true

14   *Brady* violation.  These include (1) the evidence at issue must be favorable to the accused, either

15   because it is exculpatory, or because it is impeaching; (2) the evidence must have been suppressed by

16   the State, either willfully or inadvertently; and (3) prejudice must have ensued.  *Strickler v. Greene,*

17   527 U.S. 263, 281-282, 119 S.Ct. 1936,1948 (1999).  "The question is not whether the defendant

18   would more likely than not have received a different verdict with the evidence, but whether in its

19   absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence."

20   *Kyles v. Whitley,*  514 U.S. 419, 435 (1995).  And, as petitioner notes, only if a petitioner can show

21   bad faith in the State's failure to preserve potentially useful evidence is due process implicated.

22   *Illinois v. Fisher,* 540 U.S. 544, 545 (2004).

23         The evidence cited by petitioner, blood and feces in a public restroom, hair in a hairbrush,

24   and fingerprints on a water bottle, are not items that would be unusual or even remarkable in a large

25   business office complex.  Thus, the State's decision to not test every surface or preserve every

26   fingerprint does not smack of bad faith.  Moreover, there was ample physical evidence tying

27   petitioner to the crime which supports the finding that the guilty verdict against him is "worthy of

28   confidence."  Counsel's decision not to move to dismiss or raise other objections to these asserted

1  failures by the State would not be considered other than tactical.  *See, Wildman v. Johnson,* 261 F.3d

2  832, 839 (9th Cir. 2001) (tactical decision by counsel with which a defendant disagrees cannot form

3  a basis for an ineffective assistance claim.); *Gerlaugh v. Stewart,* 129 F.3d 1027, 1033 (9th Cir.

4  1997) (a reasonable tactical choice based on an adequate inquiry is immune from attack under

5  *Strickland); United States v. Mejia-Mesa,* 153 F.3d 925, 931 (9th Cir. 1998) (failure to make certain

6  objections as a matter of overall litigation strategy does to constitute ineffective assistance).

7      The Nevada Supreme Court's denial of this claim was not objectively unreasonable under

8  28 U.S.C. § 2254(d) and no relief is warranted from this Court.

9      **H.    Counsel Failed to Object to the Prosecution Arguing Facts Not In Evidence**

10              **During Closing Argument.**

11      Petitioner argues he was denied effective counsel when there was no objection to the

12  prosecutor's closing argument when the prosecutor asserted that petitioner committed robbery

13  against the murder victim and petitioner's "own words" were proof of the fact.

14      "A prosecutor's arguments not only must be based on facts in evidence, but should be

15  phrased in such a manner that it is clear to the jury that the prosecutor is summarizing evidence

16  rather than inserting personal knowledge and opinion into the case." *U.S. v. Hermanek*, 289 F.3d

17  1076, 1100 (9th Cir. 2002).  Petitioner's argument arise from the prosecutor's statements as follows:

18          Count II, robbery, Billy Hanlon.  That's for Mr. Bedard kneeling Mr.
        Hanlon down, as in his own words he did, and demanding money of

19          Mr. Hanlon, as in his words he did.  And in fact, the physical
        evidence, the remains, the lifeless body of Mr. Hanlon shows,

20          offering up his wallet in an effort to save his own life.  That's when
        that count is referenced, that [sic] when Mr. Hanlon was trying to buy

21          his life, that offense was robbery.

22  Exhibit 171, pp. 174-175.  Petitioner argues that there was no evidence in the record to support these

23  arguments related to Bedard's purported demand for money from Hanlon or even that there was any

24  money taken.

25      Testimony offered by Alexander Merriam, the individual who picked petitioner up at the

26  doughnut shop on the morning after the robbery and killing, included the petitioner's reports of his

27  encounter with the victim, but those statements did not include the admission of a demand for

28  money.  Part of the testimony elicited was as follows:

14

By Mr. Schwartz (the Prosecutor):

Q.     Mr. Merriam, when the defendant told he had killed someone and he told you about the janitor, did he indicate what had happened prior to killing the janitor, if there'd been some type of a struggle?

A.     Yeah, I guess there was some kind of –

Q.     What did the defendant tell you about the struggle?

A.     That – I vaguely remember but I don't know if they were fighting or whatever, or wrestling, but I guess he had made – he had pulled the gun out and made the janitor get on the ground on his hands and knees.

Q.     Did he tell you what, if anything, the janitor said to him while he was on his hands and knees?

A.     Can you repeat the question?

Q.     Did the defendant tell you what the janitor had said to the defendant after he got down on his hands and knees?

A.     Yes.

Mr. Christiansen:     Objection, hearsay, Your Honor.

The Witness:     He was –

The Court:     Overruled.

The Witness:     – he was pleading for his life and saying that he had a family and kids, et cetera, et cetera.

Mr. Schwartz:     I have nothing further, Your Honor. Thank you.

Exhibit 170, p. 200.

Thus, there was evidence that petitioner said he had forced the victim onto his knees and that Mr. Hanlon had begged for his life. However, despite attempts to bring in testimony of petitioner's account of robbing Mr. Hanlon, no such testimony was offered. Exhibit 171, pp. 180-181.

This claim was denied by the Nevada Supreme Court without specific analysis, but with reference to *Darden v. Wainwright,* 477 U.S. 168, 181 (1986), the clearly established United States Supreme Court standard for judging prosecutorial misconduct. Exhibit 216, p. 10, n. 17. The court determined that petitioner had not demonstrated that trial counsel were ineffective for failing to object. Given the testimony that was offered, viewing the facts at the time from counsel's perspective, it was not outside the range of objectively competent representation to have missed such an objection. The denial of the claim was not objectively unreasonable as required by 28 U.S.C. § 2254(d).

**I.     Trial Counsel Failed to Object to the Improper Reasonable Doubt Instruction.**

Next, petitioner complains that counsel should have objected to the reasonable doubt

1   instruction offered at trial.[4]

2        Because this jury instruction has been held to be constitutionally valid by the Ninth Circuit

3   Court of Appeals in *Ramirez v. Hatcher,* 136 F.3d 1209, 1214 (9th Cir.) *cert denied* 525 U.S. 967

4   (1998) and *Nevius v. McDaniel*, 281 F.3d 940, 944-45 (9th Cir. 2000), the Nevada Supreme Court's

5   determination that counsel was not ineffective where the instruction was required under Nevada law,

6   was not objectively unreasonable.  Exhibit 216, p. 6.

7        **J.    Counsel Failed to Object to the Court's Improper Malice Instruction.**

8        As with other recent attacks on this jury instruction, the Nevada Supreme Court denied

9   relief, as will this Court. The implied malice instruction was a permissive inference that did not

10  relieve the prosecution of its burden of proof. *See Francis v. Franklin*, 471 U.S. 307, 314, 105 S.Ct.

11  1965 (1985) ("A permissive inference does not relieve the State of its burden of persuasion because

12  it still requires the State to convince the jury that the suggested conclusion should be inferred based

13  on the predicate facts proved.").

14       Because the jury instruction was not improper, it cannot be said that counsel's failure to

15  object to it was ineffective representation.  Thus, 28 U.S.C. § 2254(d) requires the claim to be

16  denied.

17       Ground Five - Reasonable Doubt Jury Instruction

18       Petitioner claims that the Reasonable Doubt jury instruction given at his trial violated his

19  due process rights by minimizing the State's burden of proof.  Respondents belatedly argue that

20  ground five is unexhausted, but that it also lacks merit.

21       The reasonable doubt instruction offered reads:

22       A reasonable doubt is one based on reason. It is not mere possible
         doubt but is such a doubt as would govern or control a person in the
23       more weighty affairs of life.  If the minds of the jurors, after the entire
         comparison and consideration of all the evidence, are in such a
24       condition that they can say they feel an abiding conviction of the truth
         of the charge, there is not a reasonable doubt.   Doubt, to be
25       reasonable must be actual, not mere possibility or speculation.

26  Exhibit 172, Instruction No. 5.

27

28       [4] The Reasonable Doubt Jury Instruction referenced here is set out *infra*.

                                          16

1    The United States Supreme Court has held, "the Constitution does not require that any

2    particular form of words be used in advising the jury of the government's burden of proof.   Rather,

3    'taken as a whole, the instructions [must] correctly conve[y] the concept of reasonable doubt to the

4    jury.'" *Victor v. Nebraska*, 511 U.S. 1, 5, 114 S.Ct. 1239, 1243 (1994) (quoting *Holland v. United*

5    *States*, 348 U.S. 121, 140, 75 S.Ct. 127, 137-38 (1954)) (internal citation omitted).  This same claim

6    has been raised numerous times by other petitioners and rejected by this Court based on the holdings

7    of the Ninth Circuit in *Ramirez v. Hatcher* (cert denied) and *Nevius v. Sumner, supra*., denial of the

8    claim on the merit is proper under 28 U.S.C. § 2254(d)(2), as it is "perfectly clear that the applicant

9    does not raise even a colorable federal claim."  Cassett v. Stewart, 406 F.3d 614, 623 (9th Cir. 2005)

10   quoting *Granberry v. Greer*, 481 U.S. 129, 135, 107 S. Ct. 1671 (1987).  Ground five is without

11   merit and shall be denied under 28 U.S.C. § 2254(d).

12   Ground Six - Ineffective Assistance of Appellate Counsel

13   Ground six of the petition raises a claim of ineffective assistance of appellate counsel

14   where counsel failed to raise certain direct appeal issues as violations of federal law.

15   Effective assistance of appellate counsel is guaranteed by the Due Process Clause of the

16   Fourteenth Amendment. *Evitts v. Lucey*, 469 U.S. 387, 391-405 (1985).  Claims of ineffective

17   assistance of appellate counsel are reviewed according to *Strickland's* two-pronged test.  *Miller v.*

18   *Keeney*, 882 F.2d 1428, 1433 (9th Cir.1989)*; United States v. Birtle*, 792 F.2d 846, 847 (9th

19   Cir.1986).  Petitioner must show that his appellate counsel's performance was objectively

20   unreasonable in failing to identify and bring the claims and that there was a reasonable probability

21   that, but for counsel's unreasonable failure, he would have prevailed on his appeal. *Smith v.*

22   *Robbins,* 528 U.S. 259, 285 (2000).

23   Petitioner contends that appellate counsel was deficient in his performance when he did not

24   raise the federal constitutional contours of the claim that there had been insufficient evidence to

25   support the robbery with a deadly weapon conviction under *Jackson v. Virginia*, 443 U.S. 307, 316

26   (1979), or that the multiplicity of burglary counts violated double jeopardy, as prohibited by the Fifth

27   Amendment to the United States Constitution.

28   The Nevada Supreme Court considered petitioner's claims of ineffective assistance of

1   appellate counsel applying the *Strickland* standard and, without analysis of these specific claims,

2   found that appellate counsel had not been ineffective under *Strickland*.  Exhibit 216, pp. 11 and 12.

3   The court did include a footnote, however, which indicated that any claims not discussed, but

4   previously presented in the proceedings below, were considered to be without merit.  *Id.,* p. 13, n. 27.

5        In his reply to the answer in this case, petitioner argues, and the respondents appear to

6   concede, that this Court should review these claims *de novo* because the Nevada Supreme Court did

7   not address the issues in its order affirming denial of the state post-conviction petition.  This Court

8   declines this invitation, being bound by 28 U.S.C. § 2254(d).

9        "When a federal claim has been presented to a state court and the state court has denied

10  relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of

11  any indication of state-law procedural principles to the contrary. *Harrington v. Richter,*  131 S.Ct.

12  770, 785 (U.S.,2011) *(citing, Harris v. Reed*, 489 U.S. 255, 265, 109 S.Ct. 1038 (1989) (presumption

13  of a merits determination when it is unclear whether a decision appearing to rest on federal grounds

14  was decided on another basis).  Where such a merit's determination is presumed, the deferential

15  standard of the AEDPA applies.  *Id.* ("§ 2254(d) does not require a state court to give reasons before

16  its decision can be deemed to have been 'adjudicated on the merits.' ") Thus, only if it appears that

17  the decision was an objectively unreasonable application of federal law or an objectively

18  unreasonable determination of the facts, may this Court grant relief.  *Harrington,* 131 S.Ct. at 785.

19  This standard requires a finding that "fairminded jurists could disagree" on the correctness of the

20  state court's decision.  *Yarborough v. Alvarado,* 541 U.S. 652, 664, 124 S.Ct. 2140 (2004).

21       No such conclusion can be reached here.  Counsel's decision to raise a proper state law

22  claim in a state post-conviction proceeding, while unfortunate for future federal review, does not

23  drive the conclusion in all fair-minded jurists that the Nevada Supreme Court's decision was

24  unreasonable.  The court acknowledged the proper federal standard to be applied to claims of

25  ineffective assistance of appellate counsel and drew a reasonable conclusion that appellate counsel

26  had not been ineffective.  The court's general statement that it considered no relief warranted on any

27  other claims raised must be given great deference by this Court.  Moreover, petitioner provides no

28  United States Supreme Court citation holding that appellate counsel must federalize all appellate or

1   post-conviction claims which are raised in state court on a state law basis.  A criminal defendant

2   does not have the right to "compel appointed counsel to press non-frivolous points requested by the

3   client, if counsel, as a matter of professional judgment, decides not to present those points." *Jones v.*

4   *Barnes,* 463 U.S. 745, 751, 103 S.Ct. 3308 (1983).   Ground six shall be denied.

5            Ground Seven - Cumulative Error

6            Finally, petitioner claims that his conviction should be overturned due to the cumulative

7   effect of the errors raised on direct appeal, in state habeas proceedings and in the instant Second

8   Amended Petition.

9            The cumulative error doctrine recognizes that the cumulative effect of several errors may

10  prejudice a defendant to the extent that his conviction must be overturned.  *See United States v.*

11  *Frederick*, 78 F.3d 1370, 1381 (9th Cir.1996).  The cumulative error doctrine, however, does not

12  permit the Court to consider the cumulative effect of non-errors.  *See Fuller v. Roe*, 182 F.3d 699,

13  704 (9th Cir. 1999), overruled on other grounds, *Slack v. McDaniel*, 529 U.S. 473 (2000)("where

14  there is no single constitutional error existing, nothing can accumulate to the level of a constitutional

15  violation").

16          The Nevada Supreme Court denied petitioner's claim of cumulative error, concluding that,

17  because none of his claims had merit, their cumulative effect was harmless.  Exhibit 216, p. 12.

18          A review of the record confirms that petitioner's trial was not fundamentally unfair so as to

19  give rise a due process violation.  Any errors at trial did not cause the criminal defense to be "far less

20  persuasive than it otherwise might have been."  *See Parle v. Runnels,* 505 F.3d 922, 928 (9th Cir.

21  2007) *citing Chambers v. Mississippi*, 410 U.S. 284, 294, 302-03, 93 S.Ct. 1038 (1979).  The

22  strength and abundance of physical evidence against petitioner, together with testimony of his

23  statements made to others, rendered any errors that were present at trial harmless.  *United States v.*

24  *Frederick,* 78 F.3d 1370, 1381 (9th Cir. 1996).   Moreover, the purported errors on appeal, e.g.

25  failing to federalize claims, did not make the direct appeal fundamentally unfair, where evidence of

26  guilt was so strong that, even if the claims had been dressed in their federal constitutional clothes,

27  they would not have resulted in relief.

28

19

**V.      Conclusion**

Petitioner has not demonstrated that his conviction or sentence were constitutionally infirm. The Nevada Supreme Court's determinations of the claims presented to it were not contrary to or objectively unreasonable in either the application of clearly established federal law or in its factual determinations.  No relief is warranted and petitioner's conviction and sentence must stand.

Should petitioner wish to appeal this decision, he must receive a certificate of appealability. 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22; 9th Cir. R. 22-1;  *Allen v. Ornoski,* 435 F.3d 946, 950-951 (9th Cir. 2006); s*ee also United States v. Mikels*, 236 F.3d 550, 551-52 (9th Cir. 2001). Generally, a petitioner must make "a substantial showing of the denial of a constitutional right" to warrant a certificate of appealability. *Id.;* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000).  "The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* (*quoting Slack*, 529 U.S. at 484).  In order to meet this threshold inquiry, the petitioner has the burden of demonstrating that the issues are debatable among jurists of reason; that a court could resolve the issues differently; or that the questions are adequate to deserve encouragement to proceed further. *Id.*

Pursuant to the December 1, 2009 amendment to Rule 11 of the Rules Governing Section 2254 and 2255 Cases, district courts are required to rule on the certificate of appealability in the order disposing of a proceeding adversely to the petitioner or movant, rather than waiting for a notice of appeal and request for certificate of appealability to be filed.  Rule 11(a).  This Court has considered the issues raised by petitioner, with respect to whether they satisfy the standard for issuance of a certificate of appealability, and determines that none meet that standard.  The Court will therefore deny petitioner a certificate of appealability.

**IT IS THEREFORE ORDERED** that the Motion for File Excess Pages (ECF No. 54) is **GRANTED.**

**IT IS FURTHER ORDERED** that the Second Amended Petition for Writ of Habeas Corpus (ECF No. 35) is **DENIED.**

///

///

20

1    **IT IS FURTHER ORDERED** that no Certificate of Appealability is warranted.  None
2    shall issue.
3        The Clerk shall enter judgment accordingly.
4
5        Dated this 24th day of August, 2011.
6
7    _____
8    LARRY R. HICKS
     UNITED STATES DISTRICT JUDGE
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28